IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**VICTORIA BEVAN**,

                Plaintiff

     v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

                Defendant.

No. 3:10-cv-00823-MO

**OPINION AND ORDER**

**MOSMAN, J.,**

     Plaintiff Victoria Bevan ("Bevan") challenges the Commissioner's decision finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

     I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## BACKGROUND

Born in 1979 (Admin. R.[1] [11] 126), Ms. Bevan has a high school education. (*Id.* at 150.) Ms. Bevan applied for DIB and SSI on August 10, 2006, alleging disability since March 15, 2006 (*id.* at 126, 131), due fibromyalgia, "back problems," bilateral carpal tunnel syndrome and wrist tendinitis, and migraine headaches. (*Id.* at 145.) The Commissioner denied Ms. Bevan's applications initially and upon reconsideration. (*Id.* at 82-94, 99-102.)

An Administrative Law Judge ("ALJ") held a hearing on May 18, 2009 (*id.* at 30-81), and subsequently found Ms. Bevan not disabled on August 11, 2009. (*Id.* at 16-29.) The Appeals Council accepted additional evidence into the record, but declined review of the matter on June 16, 2010. (*Id.* at 1-5.)

## THE ALJ'S FINDINGS

The ALJ found Ms. Bevan's history of mid-thoracic back strain, history of bilateral tendinitis and early carpal tunnel syndrome, fibromyalgia, depression, anxiety disorder, and cannabis abuse "severe" at step two in the sequential proceedings. (*Id.* at 19.) The ALJ found that these impairments did not meet or equal a listed disorder at step three, and assessed Ms. Bevan's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work . . . Specifically, the claimant is able to lift up to 20 pounds occasionally and up to 10 pounds frequently. She is able to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. In terms of mental limitations, the claimant is limited to unskilled work with little public contact.

---

[1] Citations "AR" refer to the indicated pages in the official transcript of the administrative record filed by the Commissioner on February 25, 2011 [11].

(*Id.* at 21.)  The ALJ found that this RFC allowed Ms. Bevan to perform work in the national economy at step five in the sequential proceedings, and therefore found her not disabled.  (*Id.* at 27-28.)

## ANALYSIS

Ms. Bevan challenges the ALJ's analysis of her testimony and that of five lay witnesses.  She also asserts that the ALJ erroneously evaluated the medical evidence and failed to follow the Commissioner's Administrative Rulings pertaining to a claimant's RFC assessment.  Finally, Ms. Bevan argues that the ALJ should have found her disabled at step five in the sequential proceedings.

**I.    Credibility**

Ms. Bevan argues that the ALJ failed to provide adequate reasons for rejecting her symptom testimony, specifically pointing to the ALJ's finding that she failed to follow recommended treatment.  (Pl.'s Opening Br. [18] 27-29.)  She also asserts that the ALJ erroneously cited the medical record pertaining to her back impairment.  (*Id.* at 28.)

**A.    Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a).  Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748,

750 (9th Cir. 1995)(citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

### B.    Credibility Analysis

The ALJ discussed Ms. Bevan's credibility at length, and concluded that her "subjective complaints and alleged limitations are not fully persuasive." (AR 22-24, 27.) The ALJ's analysis cited Ms. Bevan's inconsistent statements regarding the onset of her alleged impairments, sporadic use of pain medication, activities of daily living, marijuana use, and medical record. (*Id.* at 22-23.)

Ms. Bevan now argues that the ALJ erroneously cited her noncompliance with treatment. (Pl.'s Opening Br. [18] 31.) An ALJ's credibility analysis may cite a claimant's failure to follow treatment, *Smolen*, 80 F.3d at 1284, and use of conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). The ALJ presently noted that, "despite the allegation of quite limiting pain, the claimant has reported that she does not take her oxycodone much." (AR 23.) The ALJ also noted that Ms. Bevan did not complete a course of prescribed physical therapy, attending only one visit. (*Id.*)

The record supports the ALJ's findings. As the ALJ noted, Ms. Bevan reported that she took

PAGE 4 - OPINION AND ORDER

Oxycodone on weekends only (*id.* at 1171), and that she was "not taking it much." (*Id.* at 1171.) She also did not complete a prescribed course of physical therapy, attending one visit only. *Id.* at 975. The ALJ's findings regarding Ms. Bevan's failure to follow treatment are based upon the record and therefore affirmed.

Ms. Bevan does not address the ALJ's remaining credibility analysis. The ALJ's cited Ms. Bevan's inconsistent statements regarding the onset of her alleged impairments. (*Id.* at 23.) Such citation is appropriate, *Smolen*, 80 F.3d at 1284, and is therefore affirmed. The ALJ also discussed Ms. Bevan's activities of daily living. (AR 23, 26.) This is appropriate, *Smolen*, 80 F.3d at 1284, and this court must defer to the ALJ's interpretation of such activities where more than one reasonable interpretation of those activities may arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's reliance upon Ms. Bevan's activities of daily living in rejecting her symptom testimony is also affirmed.

Finally, the ALJ discussed Ms. Bevan's medical record at length, noting that Ms. Bevan's symptom reports were inconsistent with medical findings. (AR 22-23.) The ALJ's credibility analysis may cite the medical record in conjunction with other findings. *Smolen*, 80 F.3d at 1284; *see also Robbins*, 466 F.3d at 883. Ms. Bevan does not challenge the ALJ's finding regarding her medical record and her credibility, stating only that the ALJ's citation to a 2006 treatment note regarding her back impairment did not represent the entire period presently under review, especially as it pertains to her fibromyalgia symptoms. (Pl.'s Opening Br. [18] 30.) This submission misconstrues the ALJ's findings. The ALJ's credibility findings discusses the medical record in its entirety pertaining to Ms. Bevan's back pain (AR 22-27), and also discussed Ms. Bevan's 2007 fibromyalgia treatment. (*Id.* at 25.) Ms. Bevan fails to show that the ALJ selectively read the

PAGE 5 - OPINION AND ORDER

medical record regarding her credibility.

### C.   Credibility Conclusion

In summary, the ALJ provided sufficient reasons for finding Ms. Bevan's symptom testimony not credible. The ALJ's credibility finding is affirmed.

## II.   Medical Source Statements

Ms. Bevan argues that the ALJ accorded too much weight to the opinion of examining orthopedist George McNeil, M.D., and tangentially asserts that the ALJ did not properly review the opinions of unspecified treating medical sources. (Pl.'s Opening Br. [18] 27.) Her argument provides no citation to Dr. McNeil's opinion, explanation of its contents, or assertion of specific error by the ALJ. (*Id.*)

### A.   Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

///

///

B.     Analysis: Physician Opinions

1.     Examining Physician George McNeil, M.D.

Orthopedist Dr. McNeil evaluated Ms. Bevan in conjunction with her worker's compensation claim on June 15, 2006. (AR 758.) Dr. McNeil noted Ms. Bevan's complaints of pain in her low and upper back, reviewed treatment notes and imaging studies pertaining to this impairment produced between December 13, 2005, and March 24, 2006, and performed a physical examination. (*Id.* at 759-60.)

Dr. McNeil diagnosed "thoracolumbar strain," and characterized this condition as "resolved." (*Id.* at 763.) He wrote that her "subjective [pain] complaints far outweigh any objective findings," and recommended that "based on today's examination even though parts of it were invalidated due to pain behavior, that she could return to her regular job" without work restrictions. (*Id.* at 764.) Dr. McNeil additionally wrote "not applicable" regarding various lifting and exertional restrictions. (*Id.* at 764-65.)

Ms. Bevan asserts that the ALJ failed to adequately discuss Dr. McNeil's opinion, and that the ALJ therefore erroneously accepted it. (Pl.'s Opening Br. [18] 27, *citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).) Her indicated citation states that the ALJ must set out his own interpretation of the medical evidence, and may not simply state his conclusions. *Embrey*, 849 F.2d at 422.

The ALJ discussed Dr. McNeil's opinion, noting his clinical, diagnostic, and vocational impressions. The ALJ concluded, "Dr. McNeil is a specialist, and his opinion is well supported by his own exam and with the medical record concerning the claimant's back impairment. I thus give his opinion significant weight." (AR 24.) The Commissioner's regulations instruct that the ALJ

PAGE 7 - OPINION AND ORDER

should "generally" give greater weight to a specialist opinion. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5). The ALJ must also give greater weight to a opinion properly supported by clinical notes and findings. 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3); *Bayliss*, 427 F.3d at 1216. The ALJ's findings pertaining to Dr. McNeil are based upon the record and appropriate under the Commissioner's regulations. Ms. Bevan therefore fails to show that the ALJ's discussion was inadequate. The ALJ's findings regarding Dr. McNeil's opinion are affirmed.

### 2. Treating Source Opinions

Ms. Bevan also asserts that the ALJ should have given greater weight to various treating medical sources, noting by name William Ventres, M.D., Raisa Premysler, M.D., and physical therapist Lawrence Andes, P.T. (Pl.'s Opening Br. [18] 27.) Ms. Bevan does not articulate the omitted limitations associated with these opinions, instead saying only that the ALJ erroneously rejected them because they were based upon her own reports. (*Id.*) She fails to acknowledge that the ALJ may reject a medical source opinion predicated upon reports of a claimant properly found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Because the ALJ properly rejected Ms. Bevan's testimony, as discussed above, this court will not disturb the ALJ's subsequent rejection of the opinions of Dr. Premysler and physical therapist Mr. Andes, which are based on Ms. Bevan's reports. The ALJ's findings on the matter are affirmed.

### C. Analysis: Depression Impairment

Ms. Bevan asserts that the ALJ erroneously evaluated her depression, arguing that the ALJ improperly substituted his own opinion for that of a physician. (Pl.'s Opening Br. [18] 28.) She specifically objects to the ALJ's characterization of her depression as "situational," and argues that her depression should be characterized as "chronic." (*Id.*) The Commissioner does not answer this

argument.

The ALJ found Ms. Bevan's depression "severe" at step two in the sequential proceedings (AR 19), and restricted her to "unskilled work with little public contact" due to her mental limitations. (*Id.* at 21.) Ms. Bevan presently fails to show how a distinction between "situational" and "chronic" depression affects her work-related limitations, or that characterizing her depression as "chronic" would require greater limitation. She therefore fails to show error regarding her depression.

### D. Conclusion: Medical Source Statements

In summary, Ms. Bevan fails to show error regarding the ALJ's analysis pertaining to the medical providers discussed above or her depression. The ALJ's findings regarding the medical evidence are affirmed.

### III. Lay Testimony

Ms. Bevan challenges the ALJ's analysis of lay testimony submitted by five lay witnesses. (Pl.'s Opening Br. [18] 20.) Each submitted a response to a questionnaire from Ms. Bevan's attorney, and one additionally testified at Ms. Bevan's hearing before the ALJ.

### A. Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

### B.     Lay Statements

#### 1.     Douglas Boyle

Ms. Bevan's father-in-law, Douglas Boyle, testified at Ms. Bevan's May 18, 2009, hearing before the ALJ. (AR 67-71.) He stated that Ms. Bevan has trouble walking more than a half block, is unable to hold objects, drops things, and appears to be in pain. (*Id.* at 67-68.) In response to questioning, Mr. Boyle also stated that Ms. Bevan is "worn out easily," and must rest for five minutes after washing dishes for five minutes. (*Id.* at 68.) Mr. Boyle also responded that Ms. Bevan functions at fifteen to twenty percent of a normal person's pace, is angry, and anxious. (*Id.* at 69.)

#### 2.     Toni Crawford

Ms. Bevan's mother, Toni Crawford, submitted a third-party report to the record on August 28, 2006. (*Id.* at 182-89.) She stated that Ms. Bevan's daily activities include fixing meals for her children, doing dishes, and laundry. (*Id.* at 182.) Ms. Bevan cares for her three children and husband, as well as pets. (*Id.* at 183.) Ms. Crawford indicated that Ms. Bevan had no limitations in personal care, but cannot sleep due to pain. (*Id.*) Ms. Bevan prepares three meals per day, but cannot stand as long as she used to do. (*Id.* at 184.) She also performs household chores such as laundry and light cleaning "all day," (*id.*), cannot vacuum or lift heavy items (*id.* at 184-85), and shops for food three times weekly. (*Id.* at 179, 184.) Ms. Bevan's hobbies include watching television daily, and visiting a community center and schools. (*Id.* at 186.) Ms Crawford endorsed limitations in Ms. Bevan's ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use her hands. (*Id.* at 187.) Ms. Crawford finally stated that Ms. Bevan can walk one block before she must rest for five minutes. (*Id.*)

///

### 3. Kierra Bevan

Ms. Bevan's ten-year-old daughter, Kierra Bevan, completed an undated attorney questionnaire form. (*Id.* at 234-36.) Miss Bevan endorsed "moderate" and "marked" difficulties in her mother's ability to function. *Id.* She wrote that Ms. Bevan "doesn't clean as much," yells more, and "forgets stuff a lot." (*Id.* at 236.)

### 4. Travis Wendall

Ms. Bevan's roommate, Travis Wendall, submitted three responses to Ms. Bevan's attorney's questionnaires on February 6, 2007 (*id.* at 338-45), April 2, 2007 (*id.* at 251-58), and April 25, 2009. (*Id.* at 346-53.) These forms asked Mr. Wendall to rate Ms. Bevan's functionality on a one-to-ten scale corresponding to "mild," "moderate," "marked," and "extreme" limitations. (*Id.*)

In his first submission, Mr. Wendall first endorsed "mild" and "moderate" limitations in Ms. Bevan's "activities of daily living," and "marked" limitations in her social functioning, and "concentration, persistence and pace." (*Id.* at 338-39.) Notably, he concurrently wrote, "At work Vickie seems to have little problem concentrating but . . . when she gets home its as if her brain shuts off almost." (*Id.* at 340.) Mr. Wendall also indicated that Ms. Bevan has "health problems" "resulting in the need for changes in positions or posture more than once every two hours." (*Id.* at 343.) Finally, he endorsed that Ms. Bevan has difficulty walking and standing, and wrote "hands then feet" as an explanation. (*Id.* at 344.)

On his second attorney questionnaire, submitted approximately two months after the first, Mr. Wendall changed his endorsements from "mild" to "moderate." (*Id.* at 259-60.) On his third submission Mr. Wendall changed his endorsements to "marked" in each category (*id.* at 259-346-47), and endorsed that Ms. Bevan has a "complete inability to function independently" outside her

PAGE 11 - OPINION AND ORDER

home. (*Id.* at 350.) He also wrote that Ms. Bevan falls and trips often on flat ground, and drops things. (*Id.* at 352.)

### 5. Larry Bevan

Finally, Ms. Bevan's husband, Larry Bevin, completed an attorney questionnaire identical to those completed by Mr. Wendall, and submitted it to the record on February 6, 2007. (*Id.* at 259-266.) Mr. Bevan endorsed "moderate" limitations (*id.* at 259-61), and also indicated that Ms. Bevan had motor difficulties, needs to change position (*id.* at 264-65), and could not live alone because she requires help lifting, cleaning, and thinking. (*Id.* at 266.)

### B. Analysis: Lay Testimony

The ALJ discussed testimony submitted by each of the witnesses cited above. He first described the testimony of Miss Bevan ("Kierra"), Mr. Bevan, and Mr. Boyle in some detail (*id.* at 26-27), and concluded:

> The reports of Kierra, Mr. Bevan, and Mr. Boyle are inconsistent with the objective evidence and the bulk of the opinion evidence. Further, the record contains strong evidence of exaggerated pain behavior, which may have been demonstrated to the lay witnesses, just as they were to treating and examining sources. For these reasons, I give these reports little probative value.

(*Id.* at 27.) The ALJ subsequently described the reports of Ms. Crawford and Mr. Wendall, and found them:

> [P]artially consistent with the medical record and with the claimant's daily activities as reflected in treatment notes. However, their conclusions regarding marked limitations . . . are not consistent with the medical record as a whole. I accordingly give the reports of Ms. Crawford and Mr. Wendell some, but not great probative value.

*Id.* at 26.

Ms. Bevan's challenge to the ALJ's analysis does not describe the testimony she alleges the ALJ erroneously addressed, articulate a specific error, or explain the effect of the alleged error. Instead, she asserts only that the ALJ provided "conclusory" reasoning that is insufficiently specific, and that crediting the allegedly improperly omitted testimony establishes that she is disabled at step three under the Listings pertaining to affective disorders and anxiety. (Pl.'s Opening Br. [18] 22-23.)

The ALJ may reject lay testimony that directly conflicts the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *but see Bruce*, 557 F.3d at 1116 (holding that an ALJ may not reject lay testimony merely because it is uncorroborated by the medical evidence). The ALJ's finding that the testimony of Miss Bevan, Mr. Bevan, Mr. Boyle, Ms. Crawford, and Mr. Wendall is "inconsistent" or "not consistent" with the medical evidence is sufficient under this standard.

The ALJ also rejected their testimony because the record shows that Ms. Bevan exhibited exaggerated pain behavior. (AR 27.) The ALJ may reject lay testimony predicated upon reports of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ's inference that the statements of Miss Bevan, Mr. Bevan, and Mr. Boyle are not reliable because Ms. Bevan exaggerated her pain behavior is therefore affirmed.

In summary, the ALJ properly rejected the lay testimony. These findings are affirmed.

**IV.    RFC Assessment**

Ms. Bevan claims the ALJ erroneously evaluated her RFC under the Commissioner's Administrative Rulings. (Pl.'s Opening Br. [18] 31-32.)

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and

instructs the ALJ to make narrative findings in construing a claimant's RFC. *Id.* at *2, 7. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

Ms. Bevan's argument under SSR 96-8p states first, without explanation, that the ALJ failed to consider limitations caused by her fibromyalgia, carpal tunnel syndrome, headaches, depression, anxiety, and panic attacks. (Pl.'s Opening Br. [18] 32.) To the contrary, the ALJ found each of these impairments severe (AR19), and discussed limitations pertaining to them throughout his opinion. (*Id.* at 19-27.)

Ms. Bevan also asserts that the ALJ failed to properly address the lay testimony under SSR 96-8p. (Pl.'s Opening Br. [18] 32.) As explained above, Ms. Bevan fails to establish reversible error regarding the ALJ's assessment of that testimony. *Supra*, 12-13. Finally, Ms. Bevan states, again without explanation, that the ALJ improperly evaluated unspecified medical opinions, and her own testimony. (Pl.'s Opening Br. [18] 32.) The ALJ's analysis pertaining to this evidence is also affirmed, as discussed above. *Supra*, 4-9.

As this court has previously stated, a claimant cannot now rely upon the Commissioner's Administrative Ruling as a back door to again attack the ALJ's analysis. *Lowe v. Astrue*, No. 10-0904, slip op. at 7 (September 15, 2011). This court again rejects a request that it reevaluate the indicated evidence under SSR 96-8p. Ms. Bevan's argument fails to establish that the ALJ improperly evaluated the evidence in assessing her RFC under the Commissioner's administrative ruling. The ALJ's RFC analysis should be affirmed.

///

///

PAGE 14 - OPINION AND ORDER

V.      **The ALJ's Step Five Findings**

Finally, Ms. Bevan states, again without explanation, that the ALJ's step five findings are "unsupported by substantial evidence and contrary to law." (Pl.'s Opening Br. [18] 32.)

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.927(a)(4)(v). Here the ALJ may draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Because Ms. Bevan fails to show that the ALJ erroneously omitted work-related limitations, the ALJ's step five findings are affirmed.

## **CONCLUSION**

In conclusion, Ms. Bevan fails to show that the ALJ erroneously evaluated her testimony, the lay witness testimony, or the medical evidence. The ALJ's decision is based upon the record and the correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

Dated this   13th   day of December, 2011.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge